UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MAUREEN F. TAYLOR,

                              Plaintiff,

          -against-                                    3:12-CV-0037 (LEK/DEP)

STEVEN M. TAYLOR,

                              Defendant.
_____

STEVEN M. TAYLOR,

                    Show Cause Movant,

          -against-

INTERNAL REVENUE SERVICE;
MAUREEN F. TAYLOR; METLIFE,
INC.; and FIDELITY BROKERAGE
SERVICES, LLC,

                    Show Cause Respondents.
_____

**MEMORANDUM-DECISION and ORDER**

**I.      INTRODUCTION**

          Now before the Court is Respondent Internal Revenue Service's ("the IRS") Motion to vacate

and dissolve state court orders entered against it.  See Dkt. Nos. 8 ("Motion"), 8-1 ("Memorandum").

Defendant-Movant Steven M. Taylor ("Mr. Taylor") has opposed the Motion, and the IRS has replied.

See Dkt. Nos. 12 ("Opposition"), 16 ("Reply").  For the following reasons, the Court grants the IRS's

Motion.

## II.     BACKGROUND

In May and July 2011, the IRS made tax assessments against Mr. Taylor totaling over $316,000 for withholding tax trust fund recovery penalties imposed by 26 U.S.C. § 6672.  Dkt. 13 ("Taylor Affidavit") ¶ 3.[1]  On October 3, 2011, the IRS served a Notice of Levy against accounts held by Respondent Fidelity Brokerage Services, LLC ("Fidelity").  Id. ¶ 4.  Fidelity liquidated Mr. Taylor's assets and forwarded the $71,000 balance of his Individual Retirement Account to the IRS.  Id. ¶ 5. Fidelity still holds approximately $100,000 in Mr. Taylor's name in § 529 college savings plans ("529 plans")[2] for the benefit of Mr. Taylor's children, R.T. and H.T.[3]  Id.  The children's parents established these accounts in January 2007 and contributed most if not all of the funds therein before Mr. Taylor's tax liability was incurred and assessed.  Id. ¶¶ 6-7.  No one else has made contributions to these accounts, nor have any withdrawals been made.  Id. ¶ 7.

Meanwhile, Mr. Taylor was subject to an ongoing divorce action filed by Plaintiff Maureen F. Taylor in New York Supreme Court, Broome County, in August 2010.  Id. ¶ 2.  On December 16, 2011, the judge in that case issued, *ex parte*, a temporary restraining order freezing Mr. Taylor's assets against creditors, specifically including the IRS, accompanied by an order to show cause why that court

---

[1] The parties' briefs are harmonious on the facts, and the IRS has not submitted an affidavit or statement of facts.  Compare Mem. at 1-3, with Opp. at 1-3.  See generally Dkt.  The Court therefore recites the facts as derived from the Taylor Affidavit with an eye to the record and the parties' statements of facts in their briefs.

[2] The Court takes judicial notice of the fact that "529 plans" are named for § 529 of the Internal Revenue Code, 26 U.S.C. § 529, which confers tax advantages on such plans to encourage saving for higher education expenses.  See FED. R. EVID. 201.

[3] In accordance with Local Rule 8.1, only the initials of the children, who presumably are minors, have been used, and the Clerk is directed to seal the Opposition, the Taylor Affidavit, and the Exhibits to the Notice of Removal because those documents display the children's full names.  Dkt. Nos. 1-1, 12, 13.

should not: (1) issue a preliminary injunction to the same effect; and (2) order recovery of the previously levied $71,000.  Id. Ex. A.  The IRS removed the action to the U.S. District Court for the Northern District of New York under 28 U.S.C. § 1442(a)(1) on January 9, 2012, and filed the instant Motion on August 1, 2012.  See Dkt. No. 1 ("Notice of Removal"); Mot.

## III.    LEGAL STANDARD

### A. Effect of Removal

"Removed proceedings arrive in federal court in the procedural posture they had in state court." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 108 (2d Cir. 2006).  "Upon removal, the orders entered by the state court are treated as though they have been entered by the federal court."  Nasso v. Seagal, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2002); accord 4 B's Realty 1530 CR39, LLC v. Toscano, No. 08-CV-2694, 2009 WL 702011, at *2 (E.D.N.Y. Mar. 12, 2009); see Breedlove v. Cabou, 296 F. Supp. 2d 253, 263-65 (N.D.N.Y. 2003) (evaluating approaches in the Third, Fourth, Fifth, Ninth, and Eleventh Circuits and deeming state court order adopted immediately upon removal).  Accordingly, the Court will treat the IRS's Motion as a Motion under Federal Rule of Procedure 65(b)(4) to dissolve "its" temporary restraining order and as a demonstration of cause not to enter a preliminary injunction and order recovery of the levied money.[4]  See Breedlove, 296 F. Supp. 2d at 268 ("[O]nce a case is removed to federal court, federal not state rules of procedure govern." (citing Nasso, 263 F. Supp. 2d at

---

[4] The Rooker-Feldman doctrine generally precludes inferior federal courts from engaging in appellate review of final state court judgments.  See, e.g., Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010).  Preliminary injunctive relief is not a final judgment, however; moreover, "[b]ecause the 'Rooker-Feldman doctrine does not work to defeat a district court's authority over the management of its own case,' even where the exercise of such management 'has the secondary effect of voiding a state court determination,' the doctrine does not preclude this Court from reviewing orders that were entered prior to removal."  Nasso, 263 F. Supp. 2d at 608 n.19 (quoting In re Diet Drugs, 282 F.3d 220, 241-42 (3d Cir. 2002)).

608 (collecting cases))).[5]

## B. Preliminary Injunctive Relief

"On [a] motion to dissolve a temporary restraining order, . . . the party that obtained the order bears the burden of justifying continued injunctive relief." S.G. Cowen Sec. Corp. v. Messih, No. 00 Civ. 3228, 2000 WL 633434, at *1 (S.D.N.Y.), aff'd, 224 F.3d 79 (2d Cir. 2000). "It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction." AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[6] Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).[7] A plaintiff must satisfy each part of the

---

[5] The Court notes that the "temporary" restraining order is by its terms indefinite and would, if actually issued by the Court, have expired long ago by operation of Federal Rule of Procedure 65(b)(2) or been converted into a preliminary injunction. See Taylor Aff. Ex. A; In re Crawford, 329 F.3d 131, 135-38 (2d Cir. 2003). Due to the removal, however, "[t]he temporary restraining order issued ex parte in the New York Supreme Court remains 'in full force and effect until dissolved or modified by the district court.'" Katz v. Architectural & Eng'g Guild, Local 66, 263 F. Supp. 222, 224 (S.D.N.Y. 1966) (quoting 28 U.S.C. § 1450).

[6] The "public interest" prong does not mean that a court must consider the public interest in deciding *whether* to grant injunctive relief; rather, it means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest. S.E.C. v. Citigroup Global Mkts. Inc., 673 F.3d 158, 163 n.1 (2d Cir. 2012).

[7] The Second Circuit ordinarily permits a party to show, instead of a likelihood of success on the merits, both a balance of hardships tipping decidedly in its favor and "sufficiently serious questions going to the merits to make them a fair ground for litigation." Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010); see id. at 34-38 & n.9 (holding that this flexible standard survives Winter and rejecting Fourth and Ninth Circuit cases to the contrary). That option is not available here because an exception applies when "the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme." Id. at 35 n.4 (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995) (requiring movant to show likelihood of success)).

standard by a preponderance of the evidence.  <u>WestLB AG v. BAC Fla. Bank</u>, No. 11 Civ. 5398, 2012

WL 3135825, at *3 (S.D.N.Y. Aug. 2, 2012).

### C. Jurisdiction

The substance of the IRS's Motion to dissolve, however, is that the Court does not have

jurisdiction to order injunctive relief of the type Mr. Taylor received here.  <u>See</u> Mot.; Reply.  Where a

court's subject-matter jurisdiction is in doubt, a court must resolve that question first and proceed to

the merits of a case only if jurisdiction is established.  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523

U.S. 83, 93-101 (1998).  The party asserting that the Court has jurisdiction "bears the burden of

proving the Court's jurisdiction by a preponderance of the evidence."  <u>Selvarajah v. U.S. Dep't of

Homeland Sec.</u>, No. 10 Civ. 4580, 2010 WL 4861347, at *1 (S.D.N.Y. Nov. 30, 2010).

## IV.   DISCUSSION

### A. Sovereign Immunity and the Anti-Injunction Act

Claims like Mr. Taylor's ordinarily are barred by the United States's sovereign immunity and

the Anti-Injunction Act.  <u>See</u> 26 U.S.C. § 7421(a) (providing that, with certain exceptions, "no suit for

the purpose of restraining the assessment or collection of any tax shall be maintained in any court by

any person, whether or not such person is the person against whom such tax was assessed"); <u>Perry v.

Wright</u>, No. 12 Civ. 0721, 2013 WL 950921, at *4-5, *8-9 (S.D.N.Y. Mar. 8, 2013); <u>Dietz v. Trustco

Bank</u>, 572 F. Supp. 2d 296, 299 (N.D.N.Y. 2008) (Kahn, J.).[8]  Mr. Taylor has not pointed to any waiver

---

[8] The order to show cause states that Mr. Taylor's assets held by Fidelity are marital assets and therefore protected from levy by creditors, "including the Internal Revenue Service," by New York Domestic Relations Law § 236, pt. B, § 2.  Taylor Aff. Ex. A.  That provision is a set of automatic orders that applies to the parties in a matrimonial action, with no indication that it applies to any third party, much less the United States, which is not bound by state law.  <u>See generally</u> U.S. CONST. art. VI; cl. 2; <u>M'Culloch v. Maryland</u>, 17 U.S. 316 (1819).

of sovereign immunity or exception to the Anti-Injunction Act necessary for the Court to have jurisdiction in this case.  See Opp.

The IRS, however, has informed the Court that Mr. Taylor's argument meshes with 26 U.S.C. § 7426(a)(1), which surmounts both of those hurdles by providing for a "wrongful levy" suit wherein suit may be brought by a person who claims an interest in levied-upon property but who is not "the person against whom is assessed the tax out of which such levy arose."  See Reply; see also 26 U.S.C. § 7426(b) (granting district courts jurisdiction of and authorizing certain remedies in wrongful levy suits); Meminger v. IRS, No. 91 Civ. 6971, 1993 WL 17311, at *2 (S.D.N.Y. Jan. 21, 1993) ("It is well established that a bank account is property 'subject to levy' . . . .").  The Court therefore will analyze Mr. Taylor's claim regarding the $100,000 in the 529 plans under the rubric of a wrongful levy suit. The elements of such a suit are: "(1) the IRS filed a levy covering taxpayer liability against property held by [party A]; (2) [party A] had an interest [in] or lien on that property superior to the interest of the United States; and (3) the levy was wrongful because [party B, the levied-upon party,] did not own the property."  Marshall v. United States, 831 F. Supp. 988, 997 (E.D.N.Y. 1993).

Mr. Taylor has made no attempt to show why he is entitled to recovery of the already levied $71,000 from his Individual Retirement Account, nor is that sum capable of supporting a wrongful levy action because he has alleged no plausible basis to make the required showing that it was not his property.  See Opp.; Hynard v. IRS, 233 F. Supp. 2d 502, 511 (S.D.N.Y. 2002).  The IRS therefore has shown, via its jurisdictional arguments, cause why the Court should not order recovery of that sum, and such an order will not issue.  To the extent Mr. Taylor continues to object to the levy of that sum, he should avail himself of the administrative remedies described in the IRS's Motion and, once those avenues have been exhausted, initiate a refund suit in federal district court if the matter still has not

been resolved to his satisfaction.

### B. Wrongful Levy

#### 1. Standing

Mr. Taylor's argument regarding the 529 plans is that they are custodial accounts under New York's version of the Uniform Transfer to Minors Act ("UTMA") and therefore not Mr. Taylor's property and not properly subject to levy for his tax debts.  See Opp.; N.Y. EST. POWERS & TRUSTS LAW § 7-6.9.  Instead, or so goes the argument, those accounts are the property of the Taylors' children, and Mr. Taylor is suing on their behalf merely in his capacity as custodian or as parent and next friend of minors.  See FED. R. CIV. P. 17(c); N.Y. C.P.L.R. § 1201; N.Y. EST. POWERS & TRUSTS LAW § 7-6.11(b); see also FED. R. CIV. P. 17(a)(3) (requiring a court to provide an opportunity for the real party in interest to ratify, join, or be substituted into an action before dismissal can be had for failure to do so).  Nowhere has Mr. Taylor alleged, however, that R.T. and H.T. are minors.  See Opp.  Mr. Taylor therefore has failed to meet his burden to establish that he has standing to bring suit on behalf of R.T. and H.T., and preliminary injunctive relief must be denied on that basis.[9]  See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 58-59 (2d Cir. 2000) (holding that a parent lacked standing to bring suit based on a New York UGMA account[10] once the child turned eighteen); cf. Schuppin v.

---

[9] The Court notes that if R.T. and H.T. are minors, the Taylors' pending divorce presents another hurdle to standing insofar as parental custody or joint consent may have to be established.  See, e.g., Mulready v. Mulready, No. 3:06-CV-0934, 2007 WL 1791120, at *1 (D. Conn. June 16, 2007).

[10] The UTMA went into effect on July 10, 1996, replacing its predecessor, the Uniform Gifts to Minors Act ("UGMA").  The UTMA provides broader coverage than the UGMA, and the Court has not discovered or been directed to any indication that the UTMA was intended in any way to overturn precedents interpreting similar provisions of the UGMA.  Compare Marshall, 831 F. Supp. at 998 (quoting the UGMA), with N.Y. EST. POWERS & TRUSTS LAW § 7-6.9 (parallel section of UTMA).  Accordingly, the Court will employ case law applying the UGMA in its discussion of the UTMA in this case.

Unification Church, 435 F. Supp. 603, 605 (D. Vt. 1977) ("Such rights as [the parents] may have had because of their daughter's infancy to prosecute an action in her behalf as parents and natural guardians or next friends clearly ceased when [she] became of full age.").

### 2. *New York UTMA Accounts*

Alternatively, Mr. Taylor has failed to meet his burden to show that the 529 plans qualify as UTMA accounts, and therefore that those accounts are the property of his children, and therefore that those accounts are capable of supporting a wrongful levy suit that he might bring on his children's behalf.  The UTMA provides in relevant part that

> custodial property is created and a transfer is made whenever: . . . money is paid or delivered . . . to a broker or financial institution for credit to an account in the name of the transferor, an adult other than the transferor, or a trust company, followed in substance by the words: "as custodian for _____ (name of minor) under the New York Uniform Transfers to Minors Act" . . . .

N.Y. EST. POWERS & TRUSTS LAW § 7-6.9(a)(2).  Such a transfer is

> irrevocable, and the custodial property is indefeasibly vested in the minor, but the custodian has all the rights, powers, duties, and authority provided in this part, and neither the minor nor the minor's legal representative has any right, power, duty, or authority with respect to the custodial property except as provided in this part.

Id. § 7-6.11(b).  Mr. Taylor argues that R.T. and H.T. are the beneficiaries of the 529 plans, but provides no evidence that the accounts bear any designation following Mr. Taylor's name that could fairly be said to describe the accounts as custodial under the UTMA.  See Opp. at 2.  The IRS in turn argues that this lack of designation is fatal to Mr. Taylor's attempt to describe the accounts as custodial under the UTMA.  See Reply at 4.

Courts have held that use of the UTMA's "magic words" is not sufficient to prove conclusively that an account is custodial in New York; rather, such use merely creates a rebuttable *prima facie* case that the requisite donative intent existed to make a gift.  See Gordon v. Gordon, 419 N.Y.S.2d 684,

688-89 (App. Div. 1979), <u>aff'd mem.</u>, 417 N.E.2d 1009 (N.Y. 1980); <u>accord</u> <u>In re Estate of Ajamian</u>,

705 N.Y.S.2d 704, 708-09 (App. Div. 2000); <u>Leonard v. Leonard</u>, 643 N.Y.S.2d 199, 200 (App. Div.

1996); <u>N.B. v. R.B.</u>, 819 N.Y.S.2d 211 (Table), 2006 WL 1340993, at *14-15 (Sup. Ct. 2006); <u>see also</u>

<u>Marshall</u>, 831 F. Supp. at 998-1003.  The question here is instead whether a gift has been made

notwithstanding Mr. Taylor's failure to establish the accounts using the UTMA's "magic words."

Mr. Taylor contends that the IRS "has not demonstrated that the deposits in these accounts were

made without the requisite donative intent."  Opp. at 4.  That argument misstates the burden where, as

here, there has been no *prima facie* showing of donative intent via compliance with UTMA procedures;

the burden of proving a gift remains with Mr. Taylor to show by clear and convincing evidence.  <u>See</u>

<u>Bader v. Digney</u>, 864 N.Y.S.2d 606, 608 (App. Div. 2008).  In his favor, Mr. Taylor has asserted,

without objection by the IRS but also with scant supporting evidence, that: (1) these accounts are of a

type commonly and explicitly used to save money for a minor's eventual higher education expenses;

(2) the accounts were opened, and most if not all of the funds deposited, before Taylor's tax debts

arose; and (3) no withdrawals have been made.  <u>See</u> Taylor Aff. ¶¶ 5-7.

However, several courts have held, at least in the bankruptcy context, that although 529 plans

are treated as gifts for purposes of federal gift tax, the accounts remain the property of the account

holder, who has full access to withdraw funds, change the account beneficiary, and so forth, and not the

property of the beneficiary.  <u>See, e.g.</u>, <u>In re Addison</u>, 540 F.3d 805, 819-20 (8th Cir. 2008); <u>In re Bronk</u>,

444 B.R. 902, 918-25 (Bankr. W.D. Wis. 2011); <u>In re Bourguignon</u>, 416 B.R. 745, 749-51 (Bankr. D.

Idaho 2009); <u>cf.</u> <u>In re Quackenbush</u>, 339 B.R. 845, 852-53 (Bankr. S.D.N.Y. 2006) (holding that

UGMA account was property of donee debtor); <u>In re Altchek</u>, 124 B.R. 944, 958 (Bankr. S.D.N.Y.

1991) (holding that UGMA account was not property of donor debor).[11]  In light of this, the Court cannot hold that every 529 plan is necessarily an irrevocable gift to the beneficiary, or even *prima facie* evidence thereof.  Neither party has briefed why the accounts in this case should nevertheless be treated as such.  The Court therefore concludes that: (1) Mr. Taylor has not shown by clear and convincing evidence that he had intent to irrevocably transfer the money in the 529 plans to R.T. and H.T.; (2) the money in the 529 plans therefore remains Mr. Taylor's property; and (3) Mr. Taylor therefore has not established an exception to the jurisdictional bars of sovereign immunity and the Anti-Injunction Act.  Cf. Drumheller v. Drumheller, 972 A.2d 176, 196-97 (Vt. 2009) (holding that a record was too scant to determine whether a 529 plan was also a UGMA account).  Accordingly, preliminary relief must be denied and the case dismissed because of the jurisdictional defects.

### C. Severance

Even if Mr. Taylor cures the jurisdictional defects in his wrongful levy claim, the Court would be left with two claims in this case that have little if anything to do with each other: (1) a wrongful levy claim by Mr. Taylor, as custodian for or parent and next friend of R.T. and H.T., against the IRS; and (2) a divorce action against Mr. Taylor by his soon-to-be ex-wife.  The Court does not have jurisdiction over the divorce action.  See, e.g., Hamilton v. Hamilton-Grinols, 363 F. App'x 767, 769 (2d Cir. 2010) ("Under [the domestic-relations] exception, federal courts are divested of jurisdiction in 'cases involving the issuance of a divorce, alimony, or child custody decree' . . . ." (quoting Ankenbrandt v.

---

[11] New York provides an exemption in bankruptcy to college savings funds, but only up to $10,000 in the aggregate where the debtor is the account owner but not also a minor and the designated beneficiary.  N.Y. C.P.L.R. § 5205(j).  The $10,000 so shielded is out of reach of ordinary creditors, but perhaps not the IRS; moreover, it may well remain the property of the account holder for jurisdictional purposes.  Because resolution of that question is unnecessary to disposition of the present motion, and because the parties have not briefed that question, however, the Court does not answer it.

Richards, 504 U.S. 689, 704 (1992))).  Therefore, the Court severs the two claims and remands the

divorce claim to New York Supreme Court.  See FED. R. CIV. P. 12(h)(3), 21.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Respondent IRS's Motion (Dkt. No. 8) to vacate and dissolve the temporary

restraining order and the order to show cause is **GRANTED** insofar as those orders in any way

interfere with the IRS's levy against Defendant-Movant Taylor, including prohibiting Respondent

Fidelity from disbursing assets to the IRS; and it is further

**ORDERED**, that Defendant-Movant Taylor's claim against the IRS is **DISMISSED without**

**prejudice**; and it is further

**ORDERED**, that if Defendant-Movant Taylor does not file papers to cure the jurisdictional

defects in his claim against the IRS **within thirty (30) days** from the date of filing of this

Memorandum-Decision and Order, the Clerk of the Court close this case without further order of the

Court; and it is further

**ORDERED**, that the Clerk of the Court seal the Exhibits to the Notice of Removal (Dkt. No. 1-

1), the Opposition (Dkt. No. 12), and the Taylor Affidavit (Dkt. No. 13) in accordance with Local Rule

8.1; and it is further

**ORDERED**, that Plaintiff Maureen F. Taylor's divorce action against Defendant-Movant

Taylor is **REMANDED** to New York Supreme Court, Broome County; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated:          March  21, 2013
                Albany, NY


_____
          Lawrence E. Kahn
          U.S. District Judge

12